1. Allegations in a petition charging collusion, conspiracy, assurances, and agreements on the part of a corporation and an association, but naming no person or persons who thus acted on behalf of the corporation and the association, were properly stricken upon special demurrer.
2. The members of a union organization, who have constituted the organization exclusive bargaining agent on behalf of all employees of their employer, are bound by the terms of a contract made on their behalf by the organization.
 No. 15035. JANUARY 5, 1945.
The plaintiffs in error filed a suit against Postal Telegraph-Cable Company and Western Union Telegraph Company, and by amendment made American Communications Association, CIO, a party defendant. The petition alleged, in substance: that the plaintiffs were, at the times detailed in the petition, employees of Postal Telegraph-Cable Company; that Western Union Telegraph Company was named a defendant for the reason that it had bought out the business of Postal Telegraph-Cable Company and had assumed its indebtedness; that "the defendant Postal Telegraph-Cable Company, during the period of plaintiffs' employment, employed only union labor, and plaintiffs, in order to obtain employment and continue in the employ of the said defendant, were required to join and become members of a union organization known as American Communications Association, CIO, with whom the *Page 729 
said defendant, Postal Telegraph-Cable Company, had entered into a contract agreeing that said association was the exclusive representative for collective bargaining in all matters pertaining to its employees, their rates of pay, hours of employment, etc., of all the employees of said Postal Telegraph-Cable Company;" that Postal Telegraph-Cable Company, during the period of the plaintiffs' employment, collected union dues from the plaintiffs' wages and paid the union dues to the defendant association; that, effective October 1, 1942, Postal Telegraph-Cable Company entered into a contract with the association, providing for an increase in wages of 12 1/2 cents per hour to employees in the class of the plaintiffs; that the contract was, by its terms, made effective October 1, 1942, but was not actually executed until June 14, 1943; that, during the period of time between October 1, 1942, and June 14, 1943, the plaintiffs were from time to time assured by Postal Telegraph-Cable Company and the association that they would receive the increase in wages, and, in consideration thereof, the plaintiffs continued to work and allow union dues to be collected from their wages; that they were informed by their employer in the spring of 1943 that it was going out of business, and they, for that reason, obtained other employment, at which time they were assured by their employer that they would receive the increase in wages; and that, on about July 1, 1943, certain employees were paid the increase in wages, but, upon demand, the increase was denied the plaintiffs, and for the first time the following clause in the contract was called to the plaintiffs' attention: "(b) This section shall be retroactive to October 1, 1942, as to all employees on the payroll of the company on the date of execution of this contract and as to all employees who have since October 1, 1942, become members of the armed forces of the United States and to all employees who have gone on pension since October 1, 1942."
The petition further alleged that the "plaintiffs are now informed and believe, and upon such information and belief they allege, that their employer, Postal Telegraph-Cable Company, and the said American Communications Association, CIO, acting in collusion, did enter into a conspiracy against plaintiffs on or about July 1, 1943, the purpose and object of which was to avoid the payment of said back wages due to plaintiffs, and that, in furtherance of said conspiracy and collusion and in consummation thereof, *Page 730 
the said parties did on or about said date cause to be entered into said contract" the clause above quoted; "that said clause was entered in said contract after plaintiffs had rendered their services to their employer as aforesaid, and plaintiffs had already earned said back wages under the original contract and said agreement and understanding had with their employer, and that the said attempt to change said agreement and contract on said date was entirely unauthorized, and plaintiffs' said representative acted without any authority, and in excess of its authority, and all of which was well known to said Postal Telegraph-Cable Company and was a part of said conspiracy to avoid payment of its just indebtedness to plaintiffs."
An exhibit to the petition set out the amount claimed to be due each of the plaintiffs, and showed that they left the employment of Postal Telegraph-Cable Company on February 24, 1943, February 17, 1943, May 10, 1943, January 13, 1943, and February 2, 1943.
Section 1, subsection (a), of the contract dated October 1, 1942, reads: "The company recognizes the union as the exclusive representative for collective bargaining in all matters pertaining to rates of pay, wages, hours of employment, and other conditions of employment for all employees of the company including wire chiefs and traffic chiefs who were eligible to vote in the election held pursuant to the direction of election dated November 22, 1938, as amended, issued by the National Labor Relations Board, except employees, who, because of their positions, shall be deemed ineligible for membership by the union." Section 31, subsection (a), of the contract provides: "The company shall increase straight-time hourly wage rates, commissions, and piece rates within the bargaining units as follows: . . All employees in the bargaining unit, save messengers and route aids, shall receive an increase of 12 1/2 cents."
The prayers of the petition were: (a) that clause (b) of the contract be declared and decreed void as against the rights of the plaintiffs; (b) "that the said contract, entered into by and between said parties for the benefit of plaintiffs, be reformed so as to speak the truth and the true intentions and understandings of the plaintiffs and the defendant Postal Telegraph-Cable Company, and under which plaintiffs rendered their services to said defendant, *Page 731 
by eliminating therefrom the provisions of said clause herein referred to; (c) that plaintiffs have judgment against the defendants jointly and severally for the sum of $644 besides interest thereon at 7% per annum from June 1, 1943;" and (d) for general relief.
In response to the special demurrers hereinafter quoted, the plaintiffs amended their petition by adding the following: "That plaintiffs made application for membership in said American Communications Association, CIO, at the request and direction of their said employer, Postal Telegraph-Cable Company, and for the purpose and in order that their said employer might be enabled to comply with its contract made with the said American Communications Association, CIO, which, among other things, required it to deduct from plaintiffs' wages each month certain dues, and remit the same to the said American Communications Association, CIO.
"That plaintiffs are not named as parties to said contract between their former employer, Postal Telegraph-Cable Company, and American Communications Association, CIO, but plaintiffs allege that said contract, for and in consideration of the monthly dues collected out of their monthly wages by their employer and paid over by it to the said American Communications Association, CIO, was made for the sole use and benefit of plaintiffs and other employees similarly situated.
"That after October 1, 1942, and from time to time thereafter during the period of plaintiffs' employment, the exact dates being unknown to plaintiffs, Postal Telegraph-Cable Company and American Communications Association, CIO, acting by and through their duly authorized agents in charge of their agencies and place of business in Augusta, Georgia, did inform plaintiffs and assure them that the said increase in wages would be available and effective and payable from said date to plaintiffs and the other employees of the defendant Postal Telegraph-Cable Company.
"That while the said sub-section (b), construed in connection with the other expressed provisions of the contract, does not in terms eliminate plaintiffs or prevent them from recovering said increase in wages, plaintiffs believe that such was the purpose and intention of said parties, and neither of them acted as the agent *Page 732 
or representative of the plaintiffs in causing said sub-section to be inserted in said contract."
To the petition as thus amended, the defendants Postal Telegraph-Cable Company and Western Union Telegraph Company filed the following general demurrer: "(1) That said petition sets forth no cause of action against these defendants or either of them; (2) that the facts alleged in said petition show that plaintiffs are not entitled, either jointly or severally, to any recovery against these defendants or either of them; (3) that it affirmatively appears from said petition that the alleged rights of plaintiffs are entirely derivative and dependent upon the definitive contract executed between their sole bargaining representative, American Communications Association, CIO, and Postal Telegraph-Cable Company, and that plaintiffs are precluded by clause B of said contract, as quoted in paragraph 14 of their petition, from the recovery for which they pray in this suit."
The defendants Postal Telegraph-Cable Company and Western Union Telegraph Company filed the following special demurrer:
"4. Defendants demur specially to so much of paragraph 7 of said petition as alleges that plaintiffs were from time to time assured by Postal Telegraph-Cable Company that they would receive increased wages and that, in consideration of such assurances, plaintiffs continued to work for said defendant. Said allegations are too vague, indefinite, and uncertain, for that they do not specify the dates or places when said assurances were given, or by whom, or allege that said assurances were given by responsible representatives of Postal Telegraph-Cable company who were acting within the scope of their authority in giving such assurances.
"5. Defendants demur specially to so much of paragraph 7 of said petition as alleges that plaintiffs were from time to time assured by American Communications Association, CIO, that plaintiffs would receive increased wages and that, in consideration of said assurances, plaintiffs continued to work for Postal Telegraph-Cable Company and continued to allow it to deduct union dues from their wages. Said allegations are entirely irrelevant and immaterial so far as these defendants are concerned, for neither of these defendants can in any way be obligated or bound by any alleged oral assurances given by American Communications Association, CIO, to its members, it not being alleged that either of these defendants authorized or participated in any such assurances. *Page 733 
"6. Defendants demur specially to paragraph 9 of said petition as being vague, indefinite, and uncertain because it is not stated when, where, or by whom the alleged assurances were given to plaintiffs, or that such assurances were given by a responsible representative of Postal Telegraph-Cable Company acting within the scope of his authority in so doing. Defendants further demur to said paragraph because the alleged assurances were unenforcible and illegal as being without consideration and without the necessary approval of the National War Labor Board, having jurisdiction in the premises.
"7. Defendants demur specially to the first sentence of the tenth paragraph of said petition as being vague indefinite, uncertain, and immaterial, for that it is not specified when, where, or by whom the alleged `definite agreement and understanding' was made on behalf of Postal Telegraph-Cable Company, nor are the provisions thereof set forth in said petition, and the fact of certain alleged orders being received in Augusta by local agents in charge of the business of Postal Telegraph-Cable Company could not create any rights for these plaintiffs as against the defendants herein.
"8. Defendants demur specially to the allegations of the first sentence of paragraph 11 of said petition, for that they do not specify by whom the alleged assurances were given, or that they were received from responsible representatives of Postal Telegraph-Cable Company who were acting within the scope of their authority, and such assurances were, moreover, even if given, without consideration and did not confer any rights of recovery on these plaintiffs.
"9. Defendants demur specially to so much of the fifteenth paragraph of said petition as refers to `said agreement and understanding had with their employer' and to so much of the sixteenth paragraph of said petition as refers to `said agreement and understanding had between plaintiffs and said Postal Telegraph-Cable Company and under which plaintiffs continued to work after October 1, 1942, at said increase in wages,' for said allegations are too vague, indefinite, and uncertain, either by themselves or in connection with other allegations of said petition, to constitute any cause of action in favor of plaintiffs against defendants. Defendants further demur to said allegations because nowhere in said petition is it specified when or where any oral and binding *Page 734 
agreement was entered into by and between plaintiffs and Postal Telegraph-Cable Company, or who represented said Company in making any such agreement, and that such representative was acting within the scope of his authority in so doing.
"10. Defendants demur specially to all allegations in said petition relating to an alleged oral agreement between plaintiffs and Postal Telegraph-Cable Company relative to wages due by the latter to the former, for it affirmatively appears from said petition that American Communications Association, CIO, was the exclusive representative of all employees of Postal Telegraph-Cable Company for collective bargaining in all matters pertaining to said employees, their rates of pay and hours of employment; also that these matters were under the jurisdiction and control of the National War Labor Board; and consequently, the alleged vague, indefinite, and uncertain oral agreement on which plaintiffs rely is entirely irrelevant, immaterial, lacking in consideration, and without any legal or binding force or effect."
The trial judge overruled certain other special demurrers, and, deeming it unnecessary, did not pass upon certain other general demurrers, but sustained the above-quoted grounds of the demurrers, both general and special, and dismissed the petition. The exception is to this judgment.
1. The special demurrers sustained in this case, with the exception of ground ten, were directed to the portions of the petition charging "collusion and conspiracy," for the reason that the facts constituting the alleged collusion and conspiracy do not appear; and to the portions of the petition alleging oral assurances and agreements on the part of Postal Telegraph-Cable Company and American Communications Association, CIO, for the reason that it does not appear who, or what individual, thus acted. The petition in these particulars attempts to charge these artificial persons with acts without naming the individual performing the acts. These artificial persons can act through some person duly authorized to act for them, and in no other way. When a petition fails to name any person, living or dead, through whom it is contended a corporation or an association has acted, we do not believe, as against a timely special demurrer, it can be said *Page 735 
that the petition properly charges the corporation or the association with any act. We consider this proposition of law so well established that the citation of authorities becomes unnecessary.
2. The first three grounds of the general demurrer raise substantially the same question, that the petition sets forth no cause of action. If the judgment of the trial court was correct as to the legal question raised in these grounds, then a consideration of the remaining grounds of the demurrer becomes unnecessary. What does the petition in this case attempt to do? We start from the premise that the petitioners were employees of Postal Telegraph-Cable Company, were all "members of a union organization known as the American Communications Association, CIO," and that the "Postal Telegraph-Cable Company had entered into a contract agreeing that said association was the exclusive representative for collective bargaining in all matters pertaining to its employees, their rates of pay, hours of employment, etc., of all the employees of said Postal Telegraph-Cable Company." The petition thus shows that the association was the exclusive authority with whom the employer could contract as to the rates of pay of all employees. What was left in the petition after the special demurrers had been sustained simply showed that, on about October 1, 1942, negotiations were entered into between the association and the employer regarding an increase in pay for all employees, but that the contract was not finally negotiated and signed until June 14, 1943. The contract, when finally reduced to writing and signed, provided an increase in pay of 12 1/2 cents per hour as to all employees in the category of the plaintiffs. This increase in pay was retroactive to October 1, 1942, "as to all employees on the payroll of the company on the date of the execution of this contract and as to all employees who have since October 1, 1942, become members of the armed forces of the United States and to all employees who have gone on pension since October 1, 1942." The petition showed that none of the plaintiffs were on the payroll of Postal Telegraph-Cable Company on the date of the execution of the contract; and it did not allege that the plaintiffs had become members of the armed forces of the United States since October 1, 1942, nor that since that date they had gone on a pension. We have seen that under the facts stated in the petition there could be no contract until one had been entered into between the association *Page 736 
and the employer, the association having the exclusive right to contract as to rates of pay, etc. When the contract was entered into on June 14, 1943, by its express terms the plaintiffs were not entitled to benefit by its retroactive terms, this being the provision of the contract on which the suit is predicated. Therefore the plaintiffs are placed in the legal position of insisting upon the provisions of the contract made in their behalf in so far as it is beneficial to them, and of attempting to repudiate the contract in so far as its terms are not to their benefit. We do not believe that there is any room for the argument in this case that the association exceeded its authority as bargaining agent for the employees, for the reason that the petition on its face shows that the association was the exclusive authority for collective bargaining as to rates of pay, hours of employment, etc. The contract now under consideration was a contract dealing with the rates of pay. The plaintiffs in error do argue that the association was their unfaithful agent and exceeded its authority. This argument is squarely met by the Code, § 4-302: "The principal shall be bound by all the acts of his agent within the scope of his authority; if the agent shall exceed his authority, the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none." If, in cases where an agent exceeds his authority, the principal must ratify or repudiate in whole, can there be any tenable grounds for argument that, when an agent does not exceed his authority — and we hold in the instant case that the agent did not exceed its authority — the principal may ratify in part and repudiate in part the contract made on his behalf? We think not.
The plaintiffs in error argue that clause (b) of the contract above quoted, properly construed, does not eliminate them from the benefits of the contract. This argument is based upon the fact that the words, "all employees," are used in section 31, above quoted, of the contract. This language simply means that the contract is made for the benefit of all employees, and is retroactive as to all employees who can qualify under the terms of the contract. All employees who can not qualify are as effectively excluded as all employees who can qualify are included. The petition discloses that the plaintiffs were among that class of employees who were excluded. *Page 737 
From what has been said, it follows that there was no error in sustaining the demurrers and dismissing the petition.
Judgment affirmed. All the Justices concur, except Duckworth,J., who dissents.